IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONICA COZZONE, D.O., : | CIVIL ACTION NO. **3:CV-10-2388** |
| Plaintiff : | |
| v. : | |
| : | (Magistrate Judge Blewitt) |
| AXA EQUITABLE LIFE INSURANCE : | |
| SOCEITY OF THE UNTIED STATES, et al., : | |
| Defendants : | |

**MEMORANDUM AND ORDER**

**I. Background.**

On March 31, 2010, Plaintiff, Monica Cozzone, D.O., commenced this action against Defendants AXA Equitable Life Insurance Society of the United States ("AXA Equitable"), formerly the Equitable Life Assurance Society of the United States, and Disability Management Services, Inc. ("DMS"), *via* a Writ of Summons in the Court of Common Pleas of Luzerne County, Pennsylvania. On October 20, 2010, Plaintiff filed her filed a two-count Complaint, Count I, breach of contract and Count II, bad faith pursuant to 42 Pa. C.S.A. §8371, in Luzerne County.  Plaintiff attached an Exhibit A to her Complaint, namely, a copy of a disability insurance policy Defendant AXA Equitable issued to Plaintiff on November 27, 1991, providing coverage for loss that results from injury or sickness as defined in the policy. On November 18, 2010, Defendants removed this case to this Court based on diversity jurisdiction. 28 U.S.C. § 1332.[1] (Doc. 1). Plaintiff's allegations all relate

---

[1]According to the Complaint, the Plaintiff is a Pennsylvania resident, Defendant AXA Equitable is a New York company and has its place of business in New York, and Defendant DMS is a Connecticut company and has its principal place of business in Massachusetts. Plaintiff seeks damages in Count I, in an amount "in excess of $50,000.00" plus interest, costs

to the way in which Defendants processed Plaintiff's claim under her disability income overhead expense insurance policy Defendant AXA Equitable issued to her. Defendant DMS was Defendant AXA Equitable's third-party administrator regarding Plaintiff's disability claim. Plaintiff essentially alleges that Defendant AXA Equitable breached its duties to provide her with coverage for disability benefits under her disability income insurance policy. Plaintiff seeks payment with respect to her supplemental application for overhead expense disability coverage as part of the insurance policy Defendant AXA Equitable issued to her. Plaintiff alleges that she was unable to perform her regular occupation as a physician in December of 2005 due to injury or sickness, and that she submitted an application for benefits under the insurance policy Defendant AXA Equitable issued to her. Plaintiff avers that Defendants made payments for some of the benefits due under the policy, but that Defendants failed to provide full payment of all benefits due to her under the policy. Defendants denied Plaintiff's claim with respect to some of the expenses (*i.e.* insurance premiums to attach a Reporting Endorsement to her malpractice insurance) she submitted since they found that the Malpractice Tail Endorsement Premium expense was not a Covered Overhead Expense as defined by her policy. (Doc. 14, Ex. A).

On November 24, 2010, Defendants filed a Rule 12(b)(6) Motion to Dismiss Defendant DMS from this action, and to dismiss Plaintiff 's bad faith claim. On April 12, 2011, the Court denied Defendants' Motion to Dismiss. (Doc. 7). Defendants then filed their Answer to Plaintiff's Complaint with Affirmative Defenses and attached Exhibits on April 27, 2011. (Doc. 8).

---

and attorney's fees.
   28 U.S.C. § 1332(a) gives the District Court diversity jurisdiction where the matter in controversy exceeds $75,000, exclusive of interest and costs.

After the discovery was completed, on June 27, 2011, Defendants filed a Motion for Judgment on the Pleadings, pursuant to Fed. R. Civ. P. 12(c), with respect to only Count II of the Complaint. **(Doc. 13)**. Defendants also submitted Exhibits, Doc. 14, Exs. A-C. Defendants' Motion has been briefed and it is ripe for disposition.[2] (Docs. 14, 16 & 17).

## II. Motion for Judgment on the Pleadings Standard.

In *Faylor v. Szupper*, 2009 WL 2982646, *4 (W. D. Pa.), the Court stated:

> A motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *Mele, supra,* 359 F.3d at 253. Thus, we will view all facts presented in the pleadings in a light most favorable to the non-movant. *Id.* A motion for judgment on the pleadings will not be granted "unless the moving party has established that there is no material issue of fact to resolve, and that [they are] entitled to judgment as a matter of law." *Id.*

See also *Sikirca v. Nationwide Ins. Co.*, 416 F.3d 214 (3d Cir. 2005).

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:
> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal*

---

[2]The parties consented to proceed before the undersigned for all matters including trial pursuant to 28 U.S.C.§ 636(c).

in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before McTernan, Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir.2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ Iqbal, 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Philips [v. Co. of Allegheny], 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " Iqbal, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.
> Fowler, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " Guirguis v. Movers Specialty Services, Inc., No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( quoting Twombly, 550 U.S. at 555) (not precedential).

The Court in Costenbader v. Classic Design Homes, Inc., 2010 WL 597456, *3 (M.D. Pa.), also stated:

> To decide a motion to dismiss, a court generally should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. See Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993).

4

The Court finds that the Exhibits Defendants submitted, Doc. 14, Exs. A-C, can be considered since they form the basis of Plaintiff's claims.

## III. Discussion.

Defendants argue that Count II of Plaintiff's Complaint raising a bad faith claim under 42 Pa.C.S.A. §8371 should be dismissed as time barred since Plaintiff's bad faith claim accrued more than two years before she commenced her lawsuit. In her opposition brief (Doc. 16), Plaintiff contends that her bad faith claim in Count II is not time barred, and that she has raised two types of bad faith claims in her Complaint, namely, a Pennsylvania statutory bad faith claim under 42 Pa.C.S.A. §8371 and a common law claim for breach of the implied contractual duty to act in good faith.[3] Plaintiff concedes that a two-year statute of limitations period applies to her Pennsylvania statutory bad faith claim under 42 Pa.C.S.A. §8371. (Doc. 16, p. 7). However, Plaintiff states that a four-year statute of limitations period applies to her common law bad faith claim. Defendants initially reply (Doc. 17) that Plaintiff asserted only one bad faith claim in her Complaint, i.e., a Pennsylvania statutory bad faith claim under 42 Pa.C.S.A. §8371, and that Plaintiff did not raise a common law claim for breach of the implied contractual duty to act in good faith in her Complaint. The Court agrees with Plaintiff that there is a four-year statute of limitations for a common law bad faith claim. See CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co., 645 F.Supp.2d 354, 366 (E.D. Pa. (2009).

---

[3]Since this is a diversity case as stated above, the Court shall apply Pennsylvania law. Pennsylvania substantive law is utilized in this diversity case as this Court sits in Pennsylvania. See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938); Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000)(citing Erie); Sikirica v. Nationwide Ins. Co., 416 F.3d 214 (3d cir. 2005).

However, the Court agrees with Defendants and finds that Plaintiff did not properly allege a bad faith claim in her Complaint for breach of the implied contractual duty to act in good faith. See Cummings v. Allstate Ins. Co., –F.Supp.2d–, 2011 WL 2681517, *2-*3 (E.D. Pa. 7-11-11)(citations omitted); CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co., 645 F.Supp.2d 354, 369 (E.D. Pa. (2009)("In order to plead a cause of action for breach of the covenant of good faith, whether it is an express or implied covenant, a Plaintiff must properly plead the elements of a claim of breach of contract.")(citation omitted).  In fact, the Court in its April 12, 2011 Memorandum only indicated that Plaintiff 's bad faith claim was under  42 Pa.C.S.A. §8371. (Doc. 7, p. 2).  The Court further agrees with Defendants that it is axiomatic that a party cannot amend her pleading in a brief or assert a new claim in a brief that was not raised in her Complaint. Thus, as Defendants maintain, to the extent that Plaintiff is attempting  to amend her Complaint in her opposition brief (Doc. 16, p. 7) to now claim that she raised both a Pennsylvania statutory bad faith claim under 42 Pa.C.S.A. §8371, and a common law claim for breach of the implied contractual duty to act in good faith in her Complaint, the Court finds that Plaintiff raised only a statutory bad faith claim in her Complaint. As such, it is axiomatic that Plaintiff cannot make an amendment to her Complaint to add a common law claim for breach of the implied contractual duty to act in good faith *via* her brief.  See Matthews v. Villella, Civil No. 08–0964, M.D. Pa. (2-6-09 Memorandum, slip op. p. 16).

Moreover, even if Plaintiff did raise a common law claim for breach of the implied contractual duty to act in good faith in her Complaint in addition to her statutory bad faith claim, the Court agrees with Defendants that under Pennsylvania law, Plaintiff cannot raise a separate

claim for breach of the implied contractual duty to act in good faith in this case because such a common law claim merges with Plaintiff's breach of contract claim she raised in Count I of her Complaint. See *Cummings v. Allstate Ins. Co.*, –F.Supp.2d–, 2011 WL 2681517, *3-*5 (E.D. Pa. 7-11-11)(Court held that "under Pennsylvania law, there is no separate cause of action for breach of the duty of good faith and fair dealing and that such a claim is subsumed within a breach of contract claim.")(citations omitted). Thus, the Court finds that our Plaintiff cannot raise a claim for breach of the implied contractual duty to act in good faith independent of her breach of contract claim. *Id.*(citing *LSI Title Agency, Inc., v. Evaluation Servs., Inc.*, 951 A.2d 384 (2008)); *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91, n. 6 (3d Cir. 2000); *Zaloga v. Provident Life and Accident Ins. Co. of America*, 671 F.Supp.2d 623, 631 (M.D. Pa. 2009)(Court found that "there is no independent cause of action for a breach of the covenant of good faith and fair dealing arising in contract in Pennsylvania because such breach is merely a breach of contract.")(citation omitted)). See also *CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co.*, 645 F.Supp.2d at 369 ("Notably, a claim for breach of a covenant of good faith and fair dealing may not be maintained as an independent cause of action separate from the breach of contract claim.")(citation omitted).

Therefore, the Court will grant Defendants' Doc. 13 Motion to the extent that Plaintiff raises a common law claim for breach of the implied contractual duty to act in good faith in Count II of her Complaint.[4]

---

[4]The Court notes that based on the above discussion, it would be futile to allow Plaintiff to amend Count II of her Complaint in this case to add a claim for breach of the implied contractual duty to act in good faith. The Third Circuit has held that a Plaintiff whose

Next, the Court considers whether Plaintiff's statutory bad faith claim under 42 Pa.C.S.A. §8371 is time barred by the applicable two-year statute of limitations. In the case of *Krisa v. Equitable Life*, 113 F. Supp. 2d 694, 702-703 (M.D. Pa. 2000), the Court discussed a bad faith claim under Pennsylvania law.[5] The *Krisa* Court stated as follows:

> Pennsylvania has established a statutory remedy for bad faith on the part of insurance companies. Section 8371 of title 42 Pa.C.S.A. provides:
> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorneys fees against the insurer.
>
> The standard for assessing insurer bad faith under §§ 8371 was recently restated in *Keefe v. Prudential Property and Casualty Ins. Co.*, 203 F.3d 218, 225 (3d Cir.2000): [T]he term bad faith includes 'any frivolous or unfounded refusal to pay proceeds of a policy.' 'For purposes of an action against an insurer for failure to pay a claim, such conduct imparts a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self interest or ill will; mere negligence or bad judgment is not bad faith.' Therefore, in order to recover under a bad faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim. These two elements--absence of a reasonable basis for denying a claim under the policy and knowledge or reckless disregard of the lack of such reasonable basis-- must be proven by clear and convincing evidence. *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir.1997). Because "the determination of whether a given factual dispute requires submission to a jury must be

---

Complaint fails to state a cognizable claim is entitled to amend her pleading unless the Court finds bad faith, undue delay, prejudice, or futility. See *Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

[5]As noted above, since this is a diversity case as stated above, the Court applies Pennsylvania law. Pennsylvania substantive law is utilized in this diversity case as this Court sits in Pennsylvania. See *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

guided by the substantive evidentiary standards that apply to the case,"*Anderson*, 477 U.S. at 254-55, 106 S.Ct. 2505, a proponent of a bad faith claim "must present sufficient evidence such that, if believed, a jury could find bad faith under the clear and convincing standard." *Greco v. The Paul Revere Life Ins. Co.*, No. Civ.A. 97-6317, 1999 WL 95717, *3, (E.D.Pa., Feb.12, 1999).

See also *CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co.*, 645 F.Supp.2d at 368.

As discussed above, the Court agrees with Defendants that Plaintiff's claim against them in Count II is based only on the Pennsylvania bad faith statute, § 8731, and not also on a common law claim for breach of the implied contractual duty to act in good faith.

The Court also agrees with both parties that under 42 Pa. C.S.A. 8371 there is a two year statute of limitations for a bad faith claim and that it begins to run when insured first learned that the insurance company was denying coverage. *See CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co.*, 645 F.Supp.2d at 365(citing *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033 (Pa.Super. 1999)); *Sikirca v. Nationwide Ins. Co.*, 416 F.3d 214, 224 (3d Cir. 2005). The parties dispute when Plaintiff first learned that the insurance company was denying her claim for coverage under the policy Defendant AXA Equitable issued to her. Defendants argue that Plaintiff's statutory bad faith claim under 42 Pa.C.S.A. §8371 is time barred since the applicable two-year statute of limitations began to run on April 25, 2007, when Defendant DMS sent Plaintiff the letter denying her claim for coverage under her policy with Defendant AXA Equitable. (*See* Doc. 14, Ex. A). Plaintiff contends that there are underlying questions of fact with respect to when her two-year statute of limitations began to run since the September 11, 2007 letter Defendant DMS sent to her (Doc. 14, Ex. C) reinstated the application process for reimbursement regarding her claim and that "there is no evidence in the record at this time

with regard to the subsequent activities or exchange between Plaintiff and [Defendants] DMS or AXA." (Doc. 16, pp. 7-8). Plaintiff also suggests that the discovery rule is applicable to determine when her statute of limitations began to run with respect to her bad faith claim under §8371. (Id., p. 9).

At the outset, the Court agrees with Defendants that the April 25, 2007 letter Defendant DMS sent Plaintiff denying her claim for coverage under her policy with Defendant AXA Equitable "clearly and plainly reflected a denial of coverage." (Doc. 17, pp. 3-4). The April 25, 2007 letter denied a portion of Plaintiff's claim for Covered Overhead Expenses for her insurance premiums of $10,000 and $11,131 to attach a Reporting Endorsement to her malpractice insurance policy. (See Doc. 14, Ex. A). The Court agrees with Defendants that the April 25, 2007 letter clearly and unambiguously advised Plaintiff that the premiums for the stated Endorsement to her malpractice insurance policy were not "a usual expense [she] would incur to run [her] business or professional office, as required by the policy, and is therefore not a Covered Overhead Expense." (Id.). The April 25, 2007 letter concluded that Plaintiff could contact the Pennsylvania Department of Insurance if she "believes [her] claim has been wrongfully **denied or rejected**." (Id.)(emphasis added). Thus, the Court finds that April 25, 2007, was the date on which Defendant DMS first denied Plaintiff's claim which she alleges was in bad faith and that Plaintiff's two-year statute of limitations with respect to her bad faith claim commenced on this date. See Sikirca v. Nationwide Ins. Co., 416 F.3d at 224-25("Adamski held that the statute accrued when the insurer denied liability because this was when the refusal to pay first occurred. Adamski, 738 A.2d at 1042." Therefore, the applicable

two-year statute of limitations with respect to Plaintiff's statutory bad faith claim under 42 Pa.C.S.A. §8371 began to run on April 25, 2007, and it expired on April 25, 2009. As such, Plaintiff's bad faith claim is time barred since Plaintiff commenced this action on March 31, 2010, when she filed a Writ of Summons against Defendants. *See CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co.*, 645 F.Supp.2d at 376; *Adamski, supra*.

Plaintiff argues that the September 11, 2007 letter to her from Defendant DMS was "anything but unambiguously clear or unequivocal," and "essentially reinstated the process for reimbursement" of her mentioned claim for Overhead Expenses. (Doc. 16, p. 9). The Court disagrees with Plaintiff and finds that Defendants (Doc. 17, pp. 4-5) are correct that Plaintiff "may not separate initial and continuing refusals to provide coverage into distinct acts of bad faith." *See CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co.*, 645 F.Supp.2d at 365(citing *Adamski v. Allstate Ins. Co.*, 738 A.2d at 1040). As Defendants correctly point out in their reply brief (Doc. 17, p. 6), "where an insurer clearly and unequivocally puts an insured on notice that he or she will not be covered under a particular policy for a particular occurrence, the statute of limitations begins to run and the insured cannot avoid the limitations period by asserting that a continuing refusal to cover was a separate act of bad faith." *See CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co.*, 645 F.Supp.2d at 365(citing *Adamski v. Allstate Ins. Co.*, 738 A.2d 1042-43. As discussed, the Court finds that the April 25, 2007 letter Defendant DMS sent Plaintiff clearly and unequivocally put Plaintiff on notice that it was denying coverage with respect to Plaintiff's claim for Covered Overhead Expenses for her insurance premiums of $10,000 and

$11,131 to attach a Reporting Endorsement to her malpractice insurance policy. *Id.; Nat'l Recovery Agency, Inc., v. AIG Domestic Claims, Inc.*, 2006 WL 1289545, *7 (M.D. Pa. 5-9-06). Thus, Plaintiff 's §8371 bad faith claim accrued on April 25, 2007. The Court finds no merit to Plaintiff's contention that the subsequent September 11, 2007 letter from DMS indicated that her denied claim for Covered Overhead Expenses might be reconsidered and tolled the statute of limitations since this event simply related back to Defendant DMS's April 25, 2007 initial denial of her claim. *See CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co.*, 645 F.Supp.2d at 366. Also, as Defendants correctly state, "an insurance company's willingness to reconsider its denial does not toll the statute of limitations, as the limitations period runs from the time when Plaintiff's claim was **first** denied." (Doc. 17, p. 4)(emphasis original). *See CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co.*, 645 F.Supp.2d at 365-66(citing *Sikirca v. Nationwide Ins. Co.*, 416 F.3d 214 (3d Cir. 2005)). In *Sikirca v. Nationwide Ins. Co.*, 416 F.3d at 225, the Third Circuit cited to *Adamski* and stated that the *Adamski* Court rejected its Plaintiff 's argument that the insurer committed several separate and distinct acts of bad faith. The Third Circuit stated that the *Adamski* Court "held that each of these alleged acts was related to the initial denial of coverage, not a separate act of bad faith."(citing *Adamski*, 738 A.2d at 1042). In fact as our Defendants indicate (Doc. 17, p.), Plaintiff admitted in her Complaint that Defendants "failed to provide full payment of all benefits due and owing under [her] insurance policy in **March, 2007** and continued to fail to provide full and timely payment of all benefits due and owing thereafter including reimbursement of insurance charges, ... ." (Doc. 1, Ex. A, ¶ 12.)(emphasis added).

12

Finally, the Court does not find any merit to Plaintiff's suggestion that the discovery rule is applicable in this case to determine the beginning of the statute of limitations for her bad faith claim. (Doc. 16, p. 9). Generally, as discussed above, "the statute of limitations begins to run as soon as 'a right to institute and maintain suit arises.'" *CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co.*, 645 F.Supp.2d at 366(quoting *Sikirca v. Nationwide Ins. Co.*, 416 F.3d at 224-25). However, "Pennsylvania law recognizes that 'that in some circumstances, although the right to institute suit may arise, a party may not, despite the exercise of diligence, reasonably discover that he has been injured.'" *CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co.*, 645 F.Supp.2d at 366(quoting *Crouse v. Cyclops Indus.*, 560 Pa. 394, 745 A.2d 606, 611 (2000)). Further, under Pennsylvania's discovery rule, the statute of limitations begins to run when the Plaintiff has discovered his injury or, in the exercise of reasonable diligence, should have discovered his injury. *Doe v. Kohn, Nast & Graf, P.C.*, 866 F. Supp. 190 (E.D. Pa. 1994). The issue of when Plaintiff knew or reasonably knew that she was injured is generally an issue for the jury. However,"where reasonable minds could not differ in finding that a party knew of or should have known, by the exercise of reasonable diligence, of his injury and its cause, the court may determine that the discovery rule does not apply as matter of law." *CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co.*, 645 F.Supp.2d at 366-67(citations omitted).

It is abundantly clear in the present case, and readily apparent from Plaintiff's Complaint and Defendants' Answer as well as Defendants' Exhibits, that, as a matter of law, Plaintiff discovered, or should have discovered, her bad faith claim at the time Defendants denied her

13

claim for Covered Overhead Expenses which was the basis of Defendant DMS's April 25, 2007 letter to her. In fact, as Defendants point out, in the May 4, 2007 letter Defendant DMS sent to Plaintiff, Plaintiff responded to Defendant DMS's April 25, 2007 letter with her own letter of April 25, 2007, indicating that she would continue to submit expenses until the expiration of her Overhead Expense Policy. (Doc. 14, Ex. B). It is clear from the May 4, 2007 letter that Defendant DMS had denied Plaintiff's claim for Overhead Expenses on April 25, 2007, and that Plaintiff knew that her claim was denied on April 25, 2007.

Thus, the Court agrees with Defendants that the discovery rule does not apply in this case.

Accordingly, the Court shall grant Defendants' Motion for Judgment on the Pleadings (Doc. 13) with respect to Count II of Plaintiff's Complaint, §8371 bad faith claim, and it shall enter Judgment in favor of Defendants and against Plaintiff with respect to this claim.

An appropriate Order and Judgment follows.

                                          **s/ Thomas M. Blewitt**
                                          **THOMAS M. BLEWITT**
                                          **United States Magistrate Judge**

Dated: March 14, 2012